HOOPER, Chief Justice
(dissenting).
Orkin Exterminating Company, the defendant in an action pending in the Houston Circuit Court, has petitioned for a writ of mandamus ordering the trial judge to grant its motion for discovery regarding the plaintiffs’ damages; to reinstate a summary judgment against Helon Cutler and Mary Lewin (“the class representatives”) on their fraudulent-suppression claims; and to decertify the class. There is apparently no evidence that the plaintiffs have suffered any damage. That concerns me, but the adequacy of the class representatives is the more pressing problem with respect to class certification.
This Court has reviewed two earlier mandamus petitions by Orkin relating to the same action in the trial court. On March 5, 1998, this Court denied a petition for a writ of mandamus directing the trial judge to vacate a conditional class certification, Ex parte Orkin Exterminating Co. (No. 1970767) (unpublished order). On February 5, 1999, this Court denied another petition by Orkin for a writ of mandamus directing the trial judge to decertify a class, Ex parte Orkin Exterminating Co. (No. 1980634) (unpublished order). I dissented from the February 5, 1999, order because I thought the issues in the case were simply too important for this Court not to address them in an opinion. On May 5, 2000, this Court, with an opinion, affirmed the trial court’s -order dismissing those class members whose contracts with Orkin contained arbitration clauses. Cutler v. Orkin Exterminating Co., 770 So.2d 67 (Ala.2000). I concurred in that opinion. Now we have the class representatives filing individual fraudulent-suppression claims; the fact that they are doing that, in my opinion, makes them inadequate as class representatives.
The plaintiffs contracted with Orkin to provide pest control services at their *350 homes. In their class-action complaint, the class representatives claim that Orkin fails to conduct annual reinspections; fails to make complete, proper, and adequate annual reinspections; conceals these practices; falsifies reinspection records, and obtains customer signatures on reinspection certificates without performing adequate reinspections. They have presented no evidence of termite damage to their homes or even a theory of damages. This creates problems for the defendant in its attempt to defend itself.
The plaintiffs abandoned their property-damage claims, apparently to avoid having the claims declared so inherently individual that class certification under Rule 23, Ala.R.Civ.P., would be precluded. Orkin has always claimed that the individual breach-of-contract claims predominated over contract claims by the class and that the named plaintiffs had demonstrated inadequacy as class counsel because they abandoned the property-damage claims of absent class members. For example, on behalf of certain class members who have opted out of the class, class counsel have filed lawsuits seeking large amounts of damages on other claims. Yet, class counsel also contend that class members like Artie Mae Jeter should be able to elect whether to proceed with individual claims or with class claims, even though the opt-out period has passed. Class counsel have filed a $50-million "lawsuit on Jeter’s behalf.
Based on testimony by the plaintiffs’ own expert, the Jefferson Circuit Court refused even to certify the class. Judge Denny L. Holloway did grant Orkin’s motion for a summary judgment on the plaintiffs’ fraudulent-suppression claim and did not allow that claim to become a part of the classwide claim. Almost eight months later, on May 21, 1999, the plaintiffs filed a motion for “reconsideration,” seeking a reinstatement of the named plaintiffs’ individual fraud claims. On October 27, 1999, more than five months after filing their motion for reconsideration, the plaintiffs filed affidavits from the named plaintiffs, affidavits purportedly executed in June 1999. Six months passed before the trial court ruled; during that time Oiddn filed discovery motions related to the plaintiffs’ theory of damages. The parties agreed to a case-management order that had been approved by the special master and the circuit court. It required the plaintiffs to provide Orkin with crucial information regarding their alleged damage. Almost five months later, Judge Holloway, at the plaintiffs’ request, deleted the requirements in the case-management order. Or-kin still sought an itemization of the damage allegedly sustained and the method that had been used to calculate those items of damage. The special master felt bound by the circuit court’s earlier reversal of position and recommended that the plaintiffs be required only to designate the general type of damage, i.e., actual damage.
On another note, Orkin says that Judge Holloway makes uncannily rapid decisions with respect to the plaintiffs’ motions but slow decisions on Orkin’s motions. For example, Orkin’s motion to decertify has been pending for a year, yet on May 6, 1999, the plaintiffs filed a motion to continue the trial from the May 17 date, and Judge Holloway granted the motion on the same day, without a hearing and without giving Orkin a chance to respond. The trial judge did this after having said earlier:
“I’m ready for this case to be over with.... And I am not going to live with this case past May 17th. And you can either try it. You can mediate it. Or you can settle it. Those are your *351 choices. But you will try it on May 17th.”
I agree with Orkin that “[t]his case is out of control.” If this class action goes forward and reaches a result for the plaintiffs, Orkin is not certain of being relieved from the expectation of future litigation because the inadequacy of class counsel and other trial irregularities could mean the doctrine of res judicata would not bind the plaintiffs in the future. Orkin’s lack of knowledge as to the plaintiffs’ theory of damages means that it cannot adequately defend itself. The case has been pending for four years, and Orkin has yet to know what the plaintiffs’ theory of damages is. Also, the circuit court’s reinstatement of the class representatives’ individual fraud claims means that they are no longer representative of the rest of the class. For example, a named plaintiff could emphasize at trial the fraud claim (to boost damages for that individual representative plaintiff), while not focusing sufficiently on the breach-of-contract claims, to the detriment of the rest of the class. Basing its argument on the statements of the plaintiffs’ own experts, Orkin asks this question: “Can general, classwide proof be used to show that the property of each and every individual member of the putative class received an inadequate reinspection during each and every year of the class period?” That question leads to these questions of my own: Did all the class members have the same number of missed reinspections? Did they all have the same kind of damage as a result of the missed reinspections? If the answer to any of these questions is “no,” then how can this action be adequately maintained as a class action?
Orkin seeks to have this Court decertify the class, an issue upon which the Court did not order answer and briefs. Also, this Court has twice denied a request from Orkin to decertify the class. Many of Orkin’s citations are to federal cases or to cases decided in other states. I think Alabama could use some help in this area because, while this State is on the forefront of problems in the class-action area, we have not been on the forefront of solutions. Because there appear to exist rich areas for this Court to provide solutions for class-action problems in this State, this case seems to be a fairly important one for this Court to use to ensure that consistent and fair standards are used in the class-action context. I would grant the petition for the writ of mandamus; I respectfully dissent from the order denying it.