BRYAN, Justice
(concurring in the result in part and dissenting in part).
The main opinion recognizes that the Court of Civil Appeals correctly noted that a reviewing court should give a city’s interpretation of its zoning ordinances great weight and deference. See, e.g., Ex parte City of Fairhope, 739 So.2d 35 (Ala.1999). However, the main opinion then fails to give the interpretation of a zoning ordinance by the City of Huntsville (“the *644 City”) that deference because, the main opinion says, the City’s interpretation is unreasonable. I respectfully disagree; in my opinion, the City’s interpretation is reasonable.
The key issue is whether the subject lot was an “undeveloped lot” under the zoning ordinance when the owners of the lot sought to build a house on it. Under the relevant provisions of the ordinance, if the lot was a developed lot, the setback line would be 30 feet; if the lot was undeveloped, the setback line would be several more feet back. Jim McGuffey, in his role as the City’s zoning-enforcement officer, concluded that the lot should be considered a developed lot. McGuffey relied in part on A Planner’s Dictionary, a reference book containing terms used in land-use planning and in preparing zoning ordinances. That dictionary defines “undeveloped land” as “land in its natural state.” It defines “developed property” as “property or a lot upon which significant site improvements, such as utility installations, paving, and in many instances, the construction of one or more structures has occurred.” McGuffey opined that, because a house was already situated on the lot, and because sewer, water, and utility connections existed on the lot even after that house was razed, he considered the lot to be “developed” under the ordinance. That conclusion is entirely reasonable. Certainly, it was reasonable for McGuffey to rely on a dictionary used in land-use planning and in preparing zoning ordinances, and the lot fits squarely within that dictionary’s definition of a developed property. In this case the owner of the lot razed an old house on the lot, intending to immediately rebuild a house on the lot; it is reasonable to conclude that the unquestionably developed lot did not revert to an “undeveloped lot” as soon as the original house was razed.
The main opinion brushes aside McGuffey’s interpretation because it does not result in a uniform setback line. However, nowhere does the ordinance state as a purpose the establishing of a uniform setback line. A straightforward application of the ordinance would typically lead to a somewhat uniform setback line, but there may be some variation, as the present case shows. I do not think we should jettison a literal, reasonable interpretation in favor of an uniform-setback rule that is not explicitly stated in the ordinance. Further, under the reasoning in the main opinion, homeowners evidently would be prohibited from extending the front of their house up to a 30-foot setback line if doing so would create uneven setback lines in the neighborhood. However, that prohibition would conflict with a plain reading of the provision in the ordinance allowing 30-foot setbacks for developed lots.
I note also that construction on the lot began in January 2013 but that Robert E. and Betty B. Ghesnut did not file their complaint until months later, in June 2013. In their complaint, the Chesnuts sought the removal of the house from its current location. However, the house was properly permitted in its current location and should not have to be removed.
The trial court and the Court of Civil Appeals (in a unanimous opinion) correctly concluded that McGuffey’s interpretation of the zoning ordinance is reasonable; thus, I must dissent insofar as the main opinion reverses the judgment of the Court of Civil Appeals in case no. 2140043. I concur in the result insofar as the main opinion applies the doctrine of res judicata to affirm the judgment of the Court of Civil Appeals in case no. 2140042.